■ In the Matter of Jaswanthie Toolsee et al., Appellants, v Department of Housing Preservation and Development

OF THE CITY OF NEW YORK, Respondent. [750 NYS2d 24] —Order, Supreme Court, Bronx County (Howard Silver, J.), entered May 4, 2001, which denied petitioners' application to vacate, cancel and discharge respondent's recorded notice of lien, unanimously reversed, on the law, without costs, and the application granted.

Petitioners brought this proceeding to vacate a recorded notice of lien in the amount of $33,371.67, filed on November 30, 1999, by respondent the Department of Housing Preservation and Development of the City of New York (HPD), against petitioner's property located at 1053 Manor Avenue in the Bronx. The notice of lien states that the lien is to secure reimbursement of expenses incurred by HPD in providing relocation services—primarily hotel expenses—for former tenants of basement apartments in the Manor Avenue building. According to HPD, the tenants were forced to vacate the premises because of various housing and safety violations in the apartments, which were allegedly due to the owner's negligent and/or intentional acts or failure to maintain the premises in accordance with governing housing and health code regulations. In support, HPD submitted a copy of an "Order to Repair/Vacate Order," dated January 22, 1998, which listed the violations and directed occupants of the basement apartments to vacate the premises by the following day, January 23, 1998.

Petitioners assert that they never saw a copy of the vacate order until HPD submitted its response to the present proceeding and that the tenants vacated the premises, not because of the vacate order, but as a result of eviction proceedings for nonpayment of rent, which petitioners commenced pursuant to a notice of eviction served on the tenants on December 18, 1997, more than a month before the vacate order was issued by HPD. In support, petitioners submitted a copy of the eviction notice, along with an affidavit of service. Therefore, petitioners contended, any relocation expenses were not incurred as a result of any wrongful conduct by petitioners. In addition, petitioners asserted that the lien itself is invalid because the New York City Administrative Code does not include rent in the relocation expenses that may be recovered by HPD; that, even if such expenses were recoverable, HPD failed to provide adequate proof of any of the claimed expenses; and that the amount of the claimed expenses is unreasonable and, therefore, not recoverable under the Code. Petitioners also claimed that the notice of lien was defective because it did not comply with various sections of the New York City Administrative Code.

Supreme Court rejected each of the petitioners' contentions and denied the petition. Because HPD, as the lien holder, has the burden of proof with regard to the validity of the lien and because the record demonstrates that HPD failed to produce sufficient evidence to meet its burden, we reverse.

The New York City Administrative Code requires the City to provide relocation services for tenants of privately owned buildings "where the displacement of such tenants results from the enforcement of any law, regulation, order or requirement pertaining to the maint[e]nance or operation of such building or the health, safety and welfare of its occupants" (Administrative Code of City of NY § 26-301 [1] [a] [v]). The Code further provides that, where HPD has incurred expenses in providing relocation services pursuant to section 26-301 [1] [a] [v], it "shall be entitled to reimbursement of such expenses from the owner of the building from which such tenants were relocated, if the conditions giving rise to the need for such relocation arose as a result of the negligent or intentional acts of such owner, or as a result of his or her failure to maintain such dwelling in accordance with the standards prescribed by the housing or health code governing such dwelling." (Administrative Code § 26-305 [1].) The types of expenses for which HPD may obtain reimbursement "include * * * departmental costs, bonuses, moving expenses or other *reasonable* allowances given to induce tenants to relocate voluntarily" (Administrative Code § 26-305 [2] [emphasis added]). Finally, the Code provides that "[t]o the extent that such expenses are not recovered by the department, they shall, except as herein provided, constitute a lien or liens upon such building and the lot upon which it stands, governed by the provisions of law regulating mechanics['] liens" (Administrative Code § 26-305 [4]). As with any other lien, HPD, as the lien holder, has the burden of proof as to its own entitlement to the lien and as to the lien's validity (*see e.g. Matter of Gibor Assoc. v City of New York*, 91 Misc 2d 915; 77 NY Jur 2d, Mechanics' Liens § 294). Based on the record before us, it is apparent that HPD failed to sustain its burden.

As noted, the Code entitles HPD to reimbursement of relocation expenses *if* the relocation is necessitated by the landlord's negligent or intentional acts or his or her failure to maintain the premises in accordance with applicable housing and health code requirements. However, HPD failed to establish that the tenants in question vacated the apartment as a result of petitioner's failure to maintain the premises as required by law and in response to HPD's vacate order, or in response to

petitioner's eviction notice for nonpayment of rent. There is no evidence in the record that any of the tenants were served with or notified of HPD's vacate order, and petitioners contended that they were unaware of the vacate order until they received HPD's response to their petition to vacate the notice of lien. Supreme Court's finding that "no fewer than three household units,* containing six persons * * * were forced to be evicted from these apartments *as a result of [the vacate] order"* (emphasis added) is simply not supported by the evidence in the record. The HPD "Face Sheet," on which the court based its finding, does not establish the reason why the tenants vacated the apartments in question; it merely reflects that one of the tenants was checked into the West Broadway Hotel on January 23, 1998, and that another tenant, along with a second adult and two children, were checked into the Amboy Shelter on February 6, 1998. While it may be that the tenants were forced from their apartments because of petitioners' negligence, HPD failed to provide any evidentiary support for such a finding. Thus, it cannot be said with any degree of certainty that "the displacement of such tenants result[ed] from the enforcement of any law, regulation, order or requirement pertaining to the maint[e]nance or operation of such building or the health, safety and welfare of its occupants" (Administrative Code § 26-301 [1] [a] [v]), which is fundamental to a determination of the validity of HPD's lien.

Because HPD failed to establish the validity of its lien, Supreme Court's judgment must be reversed, and we need not reach petitioner's remaining contentions regarding the reasonableness of the claimed expenses, including whether rent is included among the departmental costs which HPD may recover under the Code. Concur—Nardelli, J.P., Mazzarelli, Rosenberger, Lerner and Marlow, JJ.

---

* The record seems to indicate that there were only two basement apartments that were the subjects of HPD's vacate order.